IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GLORIA QUIMBEY, DECEASED, BY THE
PERSONAL REPRESENTATIVE FOR
THE WRONGFUL DEATH ESTATE,
JOHN FAURE,

    Plaintiff,

vs.                                                              Civ. No. 14-559 KG/KBM

COMMUNITY HEALTH SYSTEMS, INC.,
COMMUNITY HEALTH SYSTEMS
PROFESSIONAL SERVICES CORPORATION,
TRIAD HEALTHCARE CORPORATION,
TRIAD HOLDINGS V, LLC, TENNYSON
HOLDINGS, LLC, LAS CRUCES MEDICAL
CENTER, LLC D/B/A MOUNTAINVIEW
REGIONAL MEDICAL CENTER,

and

ACCOUNTABLE HEALTHCARE STAFFING,
INC., ACCOUNTABLE HEALTHCARE
HOLDINGS CORPORATION, MEDASSETS
WORKFORCE SOLUTIONS, RONALD LALONDE,

and

AFFILION, LLC AND DR. JOEL MICHAEL JONES,

    Defendants.

MEMORANDUM OPINION AND ORDER

       This matter comes before the Court upon Community Health Systems, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (Motion to Dismiss), filed on June 24, 2014. (Doc. 14). Plaintiff filed a response on August 8, 2014, in which he argues against the merits of the Motion to Dismiss and, in the alternative, seeks discovery to establish personal jurisdiction over Defendant Community Health Systems, Inc. (CHSI). (Doc. 41). CHSI filed a reply on August

29, 2014.  (Doc. 45).  Having reviewed the Motion to Dismiss and the accompanying briefs and exhibits, the Court grants the Motion to Dismiss and denies Plaintiff's request for jurisdictional discovery.

I.  Background

This is a wrongful death lawsuit arising from Gloria Quimbey's death in 2012 while a patient at Mountain View Regional Medical Center (Hospital), in Las Cruces, New Mexico. Plaintiff is suing a physician, a nurse, the Hospital, and several companies associated with the Hospital, including CHSI.

 A.  *CHSI's Evidence in Support of the Motion to Dismiss*

CHSI submitted affidavits by Ben C. Fordham, senior vice president and chief litigation counsel for Defendant Community Health Systems Professional Services Corporation (PSC), which describe CHSI's business and how it relates to this lawsuit and the State of New Mexico. Fordham attests that:

 1. CHSI is a Delaware corporation with its principal place of business in Tennessee;

 2. CHSI is a publicly-traded holding company without any employees;

 3. CHSI does not operate any hospitals, including the Hospital;

 4. CHSI indirectly owns, through subsidiaries, hospitals nationwide, including the Hospital;

 5.  there are four separate entities in the ownership chain between CHSI and Defendant Las Cruces Medical Center, LLC, the owner of the Hospital;

 6. CHSI does not direct the actions of the Hospital's executives;

 7. CHSI has not entered into a partnership, joint enterprise or joint venture with the Hospital;

8. the Hospital's patients do not pay CHSI;

9. CHSI and the Hospital maintain separate accounting records and banking relationships;

10. the Hospital is not a designated agent for CHSI nor is CHSI a designated agent for the Hospital;

11. the Hospital is not required to adopt any bylaws, policies, or procedures at the request of CHSI;

12. there is no overlap between CHSI's Board of Directors and the Hospital's Board of Trustees;

13. CHSI had no role in the care of Gloria Quimbey nor did CHSI make any representations to Gloria Quimbey;

14. the Hospital's personnel who cared for Gloria Quimbey are not agents of CHSI;

15. CHSI did not furnish the equipment used to treat Gloria Quimbey or other patients;

16. CHSI does not control any aspect of the Hospital's personnel, including the Chief Executive Officer or the Chief Nursing Officer;

17. CHSI "does not transact business in New Mexico;"

18. CHSI is not registered to do business in New Mexico;

19. CHSI does not have an appointed agent for service of process in New Mexico;

20. CHSI does not have an office or place of business in New Mexico;

21. CHSI has no real property or clients in New Mexico;

22. CHSI does not advertise, market, or offer to sell services in New Mexico;

23. PSC and the Hospital are parties to a Management Agreement in which PSC provides management and consulting services to the Hospital;

24. PSC provides the Hospital with forms, policies, and procedures which the Hospital may adopt at its discretion;

25. PSC owns and operates the Community Health Systems website;

26. CHSI does not control PSC and does not directly own PSC;

27. PSC published a Code of Conduct and provided it to CHSI and its subsidiaries and affiliated hospitals;

28. the affiliated hospitals' Board of Directors adopted the Code of Conduct and elements of the Community Health Systems Compliance Program;

29. PSC assists the affiliated hospitals with their compliance programs; and

30. CHSI did not submit the Hospital's licensure application nor did a CHSI employee sign the licensure application.

(Docs. 14-1 and 45-1).

*B. Plaintiff's Evidence in Support of Personal Jurisdiction over CHSI*

Plaintiff attached to his response an organizational chart which shows that CHSI is indeed four entities removed from the Hospital. (Doc. 41-1). Plaintiff also attached website pages for "Community Health Systems" which shows that Community Health Systems has affiliated hospitals in New Mexico. (Doc. 41-2). The website indicates that the terms "CHS" or the "Company" refer to CHSI "and its affiliates, unless otherwise stated or indicated by context." *Id.* at 2. Moreover, the "term 'facilities' refers to entities owned or operated by subsidiaries or affiliates of Community Health Systems, Inc." while references to "'CHS employees' or to 'our employees' refer to employees of affiliates of CHS Inc." *Id.* The website's Terms & Conditions of Use further states that CHSI "is a holding company and does not engage in any business other

than those activities associated with being a publicly traded … stock company….” (Doc. 45-1) at 7. The Terms & Conditions of Use also state that the

> 'we,' 'us,' 'our,' 'the Company,' and similar inclusive words are intended to be summary information about the consolidation of Community Health Systems, Inc. and its subsidiaries taken as a whole, and are not intended to bind or imply that the actions of one legal entity should be attributed to the actions of another legal entity (such as Community Health Systems, Inc.).

*Id.* Additionally, the Terms & Conditions of Use state that

> [e]ach hospital affiliated with Community Health Systems, Inc. and Community Health Systems Professional Services Corporation is owned (or leased) and operated by a separate and distinct legal entity. Each such legal entity is responsible for the healthcare services delivered at its respective facility, employs its own management and other personnel, and grants medical staff privileges and credentials to its own, separate medical staff.

*Id.* at 7-8.

Plaintiff also submitted a United States Securities and Exchange Commission (SEC) Form S-4 (prospectus) for "CHS/Community Health Systems, Inc." (Doc. 41-3). That form indicates that "we" own and operate hospitals. *Id.* at 2. However, the Form S-4 notes that "[u]nless otherwise indicated or the context requires otherwise, references in this prospectus to 'CHS,' 'we,' 'our,' 'us,' and 'the Company' refer to Community Health Systems, Inc. and its consolidated subsidiaries…." (Doc. 45-4) at 2. The Form S-4 further explains that CHSI is "a holding company with no direct operations" and that its "subsidiaries are separate and distinct legal entities…." *Id.* at 3.

Next, Plaintiff submitted excerpts from CHSI's 2013 Annual Report to Stockholders which includes a map showing six New Mexico hospitals. (Doc. 41-4). The cover page to the 2013 Annual Report notes that CHSI owns and leases the affiliated hospitals through its subsidiaries. *Id.* at 1. The accompanying SEC Form 10-K states:

5

> Throughout this Form 10-K, we refer to Community Health Systems, Inc., or the Parent Company, and its consolidated subsidiaries in a simplified manner and on a collective basis, using words like "we," "our," "us" and the "Company." This drafting style is suggested by the Securities and Exchange Commission, or SEC, and is not meant to indicate that the publicly-traded Parent Company or any other subsidiary of the Parent Company owns or operates any asset, business or property. The hospitals, operations and businesses described in this filing are owned and operated, and management services provided, by distinct and indirect subsidiaries of Community Health Systems, Inc.

(Doc. 45-3).

Plaintiff also provided excerpts from the 2013 Directory of Investor-Owned: Community Hospitals, Hospital Management Companies and Health Systems, Residential Treatment Facilities and Centers, and Key Management Personnel (2013 Directory) which lists "Community Health Systems" as a Tennessee management company and describes Community Health System's six New Mexico hospitals, including the Hospital. (Doc. 41-5) at 3, 5-6. The Federation of American Hospitals published the 2013 Directory. *Id.* at 1.

Next, Plaintiff attached a website page from the SEC which lists CHSI as a Tennessee company under the category of "General Medical & Surgical Hospitals, NEC." (Doc. 41-6.).

Additionally, Plaintiff attached 2014 news releases by the Department of Justice (DOJ) and CHSI regarding CHSI's settlement with the DOJ regarding unlawful billing practices under the False Claims Act. (Docs. 41-7 and 41-10). The settlement required a monetary payment and required CHSI to enter into a Corporate Integrity Agreement that would be incorporated into CHSI's own existing compliance program that maintains "robust training, reporting and review processes." (Doc. 41-10) at 1. The CHSI news release acknowledges that CHSI only owns, leases or operates its affiliated hospitals through subsidiaries. (Doc. 41-10) at 2.

Plaintiff also submitted the Community Health Systems Code of Conduct, which the Board of Directors of CHSI adopted as well as each subsidiary. (Doc. 41-8) at 3. According to the Code of Conduct, every Community Health Services colleague must comply with the Code

6

of Conduct including "all policies incorporated into the Code of Conduct…." *Id.* at 3 and 5. The Code of Conduct indicates that a Corporate Compliance and Privacy Officer, employed by PSC, will oversee and monitor implementation of a compliance program. *Id.* at 4. Furthermore, the Code of Conduct clarifies that CHSI

> is a holding company. Its subsidiary companies and partnerships own or lease and operate their respective hospitals and other assets and businesses. Community Health Systems, Inc. does not have any employees. Throughout this document, we refer to Community Health Systems, Inc. and its consolidated subsidiaries in a simplified manner and on a collective basis, using words like "we," "our," "our organization," "CHS" and the "Company." This drafting style is suggested by the Securities and Exchange Commission, or SEC, and is not meant to indicate that Community Health Systems, Inc., or any other subsidiary of Community Health Systems, Inc. owns or operates any asset, business, or property. The hospitals, operations, and businesses are owned and operated, and management services provided, by distinct and indirect subsidiaries of Community Health Systems, Inc. Community Health Systems Professional Services Corporation ("CHSPSC"), an indirect subsidiary of CHSI, provides management and consulting services to the local operating entities pursuant to the terms of management agreements with the local entities. CHSI has no employee, and those officers and directors of CHSI who are identified in this document are employed by CHSPSC.

*Id.* at 1 n.1.

Moreover, Plaintiff provided an excerpt from the 2012 Proxy Statement for CHSI's Annual Meeting of Stockholders. Included in that Proxy Statement is a description of cash incentive compensation awards to executive officers "pursuant to the Company's 2004 Employee performance Incentive Plan." (Doc. 41-9) at 2. That Proxy Statement further states that

> [f]or simplicity of presentation throughout this Proxy Statement, we refer to employees of our indirect subsidiaries as "employees of the Company, "our employees" or similar language. Notwithstanding this presentation style, the Company itself does not have any employees. Similarly, the healthcare operations and businesses described in this Proxy Statement are owned and operated and management services provided by distinct and indirect subsidiaries of the Company.

(Doc. 45-5) at 2.

Plaintiff further attached a copy of the Management Agreement entered into by PSC and the Hospital whereby the Hospital engages PSC to provide management and consulting services. (Doc. 41-11) at ¶ 1.4(a).  The Management Agreement indicates that Defendant Las Cruces Medical Center, LLC is the owner of the Hospital and that, as owner, Defendant Las Cruces Medical Center, LLC "exercise[s] control over the assets and operation of Hospital" and does not intend "to jointly form a partnership or to become joint venturers in the operation of Hospital by virtue of the execution of this Agreement."  Id. at ¶ 1.3.  Under the Management Agreement, PSC will provide the Hospital "such guidelines, policies, procedures, and other form documents as may be useful or desirable for the operations of Hospital," which Defendant Las Cruces Medical Center, LLC may adopt at its discretion.  Id. at ¶ 1.6.  The Management Agreement notes that the Hospital has adopted CHSI's Corporate Compliance Plan and must operate in accordance with that plan as well as with "the financial accounting rules and standards, including submission to internal and external auditing…."  Id. at ¶ 1.7.  PSC agreed to help assure that Defendant Las Cruces Medical Center, LLC and the Hospital "are operated in accordance with the requirements of the CHS Compliance Program and any other similar programs related to legal or regulatory compliance in which" Defendant Las Cruces Medical Center, LLC participates.  Id.  In addition, Defendant Las Cruces Medical Center, LLC will "participate in the cash management program administered by an affiliate of" PSC.  Id. at ¶ 1.10.  Furthermore, PSC will assist Defendant Las Cruces Medical Center, LLC in preparing operating and capital budgets for submission to Defendant Las Cruces Medical Center, LLC's board of directors and for use by PSC to prepare consolidated budgets for PSC and CHSI.  Id. at ¶ 2.1  Defendant Las Cruces Medical Center, LLC also agreed that its federal income tax return will "be filed on a consolidated basis with the tax return of" CHSI.  Id. at ¶ 2.5.

Plaintiff also included 2008 deposition testimony by Leanne Hacker from a case not involving CHSI in which she states that "CHS" has to approve capital equipment purchases as well as personnel requisitions for a Roswell New Mexico hospital. (Doc. 41-12). In a 2009 deposition, Hacker acknowledged in yet another unrelated case that CHSI does not have employees and is just a holding company. (Doc. 45-8) at 3. She also noted that she deals with PSC on a weekly basis with respect to the Management Agreement. *Id.* at 2.

Finally, Plaintiff provided the Hospital's licensure application which states that both Defendant Las Cruces Medical Center, LLC and CHSI are owners of the Hospital. (Doc. 41-13) at 2. A person not employed by CHSI signed the license application. (Doc. 45-1) at ¶ 7. In fact, the Hospital's Operator's License shows that the owner of the Hospital is only Defendant Las Cruces Medical Center, LLC. (Doc. 45-9).

*C. The Affidavit in Support of Plaintiff's Jurisdictional Discovery Request*

Plaintiff submitted an affidavit by his counsel indicating that she served interrogatories and requests for production on all of Defendants. (Doc. 41-14) at ¶ 2. Counsel includes the interrogatories and requests for production in the affidavit which she states would be relevant and "helpful" to determining the Motion to Dismiss. *Id.* at ¶¶ 3-5. Counsel further indicates in the affidavit that depositions of each of the Defendants would provide information regarding the issue of personal jurisdiction over CHSI. *Id.* at ¶ 6. The Court notes that the requested discovery is extensive and broad in nature.

II. Discussion

CHSI moves to dismiss Plaintiff's claims against it under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. Plaintiff opposes the Motion to Dismiss and, alternatively, seeks jurisdictional discovery.

*A. Legal Standard*

Federal courts sitting in diversity have personal jurisdiction over nonresident defendants to the extent permitted by the law of the forum, in this case, New Mexico. *Benally v. Amon Carter Museum of Western Art*, 858 F.2d 618, 621 (10th Cir. 1988) (citations omitted). The parties may present affidavits, depositions, answers to interrogatories, and similar evidentiary matters on a motion attacking jurisdiction, which the Court freely considers. *See Sunwest Silver, Inc., v. Int'l Connection, Inc.*, 4 F.Supp.2d 1284, 1285 (D.N.M. 1998); *Jones v. 3M Company*, 107 F.R.D. 202, 204 (D.N.M. 1984). The plaintiff has the burden of establishing personal jurisdiction over the defendant. *See Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir.1996). The plaintiff meets that burden at the pre-trial motion stage if he makes a *prima facie* showing that personal jurisdiction exists. *Behagen v. Amateur Basketball Ass'n,* 744 F.2d 731, 733 (10th Cir.1984), *cert. denied,* 471 U.S. 1010 (1985). The Court accepts the plaintiff's allegations in the complaint as true if the defendant does not contest them with affidavits or other materials, and resolves all factual disputes raised by conflicting affidavits in the plaintiff's favor. *Id*. at 733.

New Mexico applies a three-part test to determine whether personal jurisdiction lies over non-residents. The Court must determine whether: (1) the defendant committed an act or omission specifically set forth in New Mexico's long-arm statute; (2) the cause of action arises out of that act or omission; and (3) the defendant has sufficient minimum contacts to satisfy due process concerns. *Tercero v. Roman Catholic Diocese of Norwich, Conn.*, 2002-NMSC-018, ¶ 8, 132 N.M. 312. However, '"[t]he first and third step of this test have been repeatedly equated with the due process standard of minimum contacts,' removing the necessity of a technical determination of whether the non-resident committed an act enumerated by the long-arm

10

statute." *Alto Eldorado Partnership v. Amrep*, 2005-NMCA-131, ¶ 30, 138 N.M. 607 (quoting *Santa Fe Techs., Inc. v. Argus Networks, Inc.,* 2002–NMCA–030, ¶ 13, 131 N.M. 772 (internal quotation marks and citation omitted)). Hence, the courts focus on the defendant's minimum contacts with New Mexico and the second step of the test. *Id.* at ¶¶ 30 and 36.

Minimum contacts with the forum state may be established through either general or specific jurisdiction. Both general and specific personal jurisdiction also require a showing that the exercise of jurisdiction would not "offend traditional notions of fair play and substantial justice." *Alto Eldorado Partneship*, 2005-NMCA-131, ¶31. Here, Plaintiff claims that the Court has both specific and general jurisdiction over CHSI.

### B. Minimum Contacts: Specific Jurisdiction

Specific jurisdiction requires a plaintiff to show that (1) a defendant has "purposely avail[ed itself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws," and (2) that "the litigation results from alleged injuries that arise out of or relate to those activities." *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1090–91 (10th Cir. 1998) (citing *Burger King Corp. v. Rudzewiczi,* 471 U.S. 462, 472 (1985)); *see also Trierweiler v. Croxton & Trench Holding Corp.,* 90 F.3d 1523, 1532 (10th Cir.1996). Specifically, the injury must arise out of "actions by the defendant *himself* that create a substantial connection with the forum state." *OMI Holdings, Inc.,* 149 F.3d at 1091 (quoting *Asahi Metal Indus. Co. v. Superior Ct.,* 480 U.S. 102, 109 (1987)). A plaintiff's *prima facie* burden to establish specific jurisdiction is less stringent than his burden to establish general jurisdiction, because general jurisdiction does not require a nexus between the contact and underlying injury. *See id.*

Plaintiff argues that although CHSI does not have employees in New Mexico, is not registered to do business in New Mexico, does not advertise in New Mexico, and has no place of business or real property in New Mexico, CHSI has, nonetheless, purposefully availed itself of the privilege of conducting business in New Mexico by operating six New Mexico hospitals, including the Hospital.  *See* (Doc. 41) at 15.  Plaintiff cites four cases in support of his argument.

First, Plaintiff cites *Burger King Corp*.  The United States Supreme Court held in *Burger King Corp.* that a foreign defendant was subject to specific jurisdiction where the dispute "grew directly out of a contract which had a *substantial* connection with" the forum state.  *Id.* at 479 (citation omitted).  Unlike in *Burger King Corp.*, it is uncontroverted that Plaintiff's claims do not arise from any contract or direct relationship between CHSI and Gloria Quimbey.  Additionally, it is uncontroverted that the dispute in this case, whether Gloria Quimbey received adequate medical care from the Hospital, does not grow directly out of CHSI's remote and indirect relationship with the Hospital.

Next, Plaintiff cites *Alto Eldorado Partnership.*  In *Alto Eldorado Partnership*, the New Mexico Court of Appeals found that the plaintiffs made a *prima facie* showing of minimum contacts because Amrep, the foreign defendant, completely controlled its New Mexico subsidiary "to the point where [the subsidiary] existed as little more than an instrument to serve Amrep's real estate interests."  2005-NMCA-131, at ¶ 33.  The uncontroverted evidence in this case does not support a finding that CHSI completely controls the Hospital so that it only serves CHSI's interests.

Plaintiff also cites *State Farm Mutual Ins. Co. v. Conyers*, 1989-NMSC-071, 109 N.M. 243.  In *Conyers*, the defendants negotiated and entered into an insurance contract in New Mexico.  Because the cause of action arose from the insurance policy, the New Mexico Supreme

Court held that personal jurisdiction over the defendants existed. *Id.* at ¶¶ 7-10.  As with *Burger King Corp.*, the cause of action here does not arise from a contract or any kind of direct relationship between CHSI and Gloria Quimbey, nor does it arise from a direct relationship between CHSI and the Hospital.

Finally, Plaintiff cites *Thistlethwaite, et al. v. Elements Behavioral Health Inc., et. al.*, Civ. No. 14-138 WJ/CG (Doc. 32) (D.N.M. July 2, 2014).  The Court in *Thistlethwaite* found specific jurisdiction over a foreign parent company because the parent company dictated the New Mexico subsidiary to act in a manner which allegedly harmed the plaintiff.  That is not the situation in this case.  The uncontroverted evidence demonstrates that CHSI did not dictate the Hospital to act in a manner which could have resulted in Gloria Quimbey's death.

In addition, the Court finds Plaintiff's assertion that CHSI "operates" hospitals in New Mexico is unsupported by the evidence.  Uncontroverted evidence establishes that CHSI is a holding company without employees which has remote ownership of New Mexico hospitals.  Notably, Plaintiff's organizational chart shows that CHSI is four entities removed from the Hospital, and the Community Health Systems website, SEC Form S-4, SEC Form 10-K attached to CHSI's 2013 Annual Report to Stockholders, the 2014 news release issued by CHSI, the Code of Conduct, and the 2012 Proxy Statement all specify that CHSI does not operate any of its affiliated hospitals.

The 2013 Directory also does not provide support for Plaintiff's contention the CHSI operates New Mexico hospitals.  First, the 2013 Directory does not specifically refer to CHSI, it refers to "Community Health Systems."  Second, a third party prepared the 2013 Directory.  As CHSI correctly notes, the United States Supreme Court has made clear that contacts resulting

from the "unilateral activity of another party or third person" are not attributable to a defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984).

Moreover, inclusive generic language in the DOJ's news release and on a website owned and operated by another entity are not sufficient evidence to show that CHSI operates New Mexico hospitals. *See Moody v. Charming Shoppes of Delaware, Inc.*, 2008 WL 2128955, at *7 (N.D. Cal.) (generic language in news release and on website "simply do not rise to the day-to-day control required to impute the subsidiary's contacts to the parent."). *See also Weisler v. Community Health Systems, Inc.*, 2012 WL 4498919, *5 (D.N.M.) (unverified newspaper article and website owned and operated by a third party which contains inclusory generic language are "not a sufficient contact to show that Defendant CHSI has purposely availed itself of the privilege of conducting activities within New Mexico and that the injury arose out of those contacts."). Similarly, SEC filings which contain inclusive generic statements are not evidence that CHSI operates New Mexico hospitals. *See Moody*, 2008 WL 2128955, at *4 and 6.

Furthermore, the Code of Conduct does not support a finding that CHSI operates New Mexico hospitals. As the court in *Weisler* recognized in a New Mexico case involving CHSI, CHSI does not require the affiliated hospitals to adopt the Code of Conduct. *Weisler*, 2012 WL 4498919 at *6. Instead, those hospitals voted to adopt the Code of Conduct. *Id.* Thus, CHSI cannot be said to operate New Mexico hospitals through the Code of Conduct.

Additionally, the Management Agreement does not demonstrate that CHSI operates the Hospital. To begin with, the Management Agreement is between the Hospital and PSC, not CHSI. The Management Agreement also explicitly provides that the Defendant Las Cruces Medical Center, LLC retains control over its assets and operations. Moreover, CHSI does not dictate what policies and procedures Defendant Las Cruces Medical Center, LLC must utilize;

Defendant Las Cruces Medical Center, LLC has the discretion to adopt any policies and procedures which PSC presents to it.  In addition, because the Hospital has chosen to adopt CHSI's Corporate Compliance Plan, it must, of course, adhere to it.  Also, the fact that the Hospital is subject to auditing and must comply with legal and regulatory standards does not suggest that CHSI is operating the Hospital.  Defendant Las Cruces Medical Center, LLC's participation in a cash management program administered by an affiliate of PSC and use of the Hospital's operating and capital budgets for PSC's preparation of consolidated budgets for PSC and CHSI, likewise, does not show CHSI's involvement in the operation of the Hospital.  Finally, consolidating tax returns is not indicative of CHSI operating the Hospital.  *See, e.g., Lowell Staats Min Co., Inc. v. Pioneer Uravan, Inc.*, 878 F.2d 1259, 1264 (10th Cir. 1989) ("we do not consider the fact of consolidated financial reports to be a sufficient basis to impose liability under the alter ego doctrine.").

Hacker's 2008 deposition testimony, likewise, does not show that CHSI operates New Mexico hospitals.  First, she does not mention CHSI, by name, as being involved in the management of hospitals.  Second, as CHSI notes, Plaintiff cannot use the 2008 deposition testimony against CHSI because it was not a party to the lawsuit in which Hacker was deposed.  *See* Fed. R. Civ. P. 32(a)(1) (at a hearing, deposition may be used against a party if "the party was present or represented at the taking of the deposition or had reasonable notice of it….").

Furthermore, although the application for licensure filled out by the Hospital states that CHSI is an owner of the Hospital, it is significant that the application was not signed by a CHSI employee and that the actual license does not name CHSI as an owner of the Hospital.  The license, thus, does not provide evidence that CHSI operates the Hospital.

Even if CHSI indirectly owns the Hospital and other New Mexico hospitals, this fact alone does not confer personal jurisdiction under New Mexico law. As CHSI correctly contends, even if a foreign parent corporation owns all of a New Mexico subsidiary corporation's stock, "jurisdiction over a subsidiary corporation does not of itself give a state judicial jurisdiction over the parent corporation…." *Jemez Agency, Inc. v. CIGNA Corp.*, 866 F. Supp. 1340, 1343 (D.N.M. 1994) (citation omitted). Additionally, the "mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent." *Id.* (citation omitted). Nonetheless, the Court may properly invoke jurisdiction over a foreign parent company predicated on the acts of one of its subsidiaries if the parent company actually controls the subsidiary's day-to-day business decisions and disregards the subsidiary's business entity. *Weisler*, 2012 WL 4498919, at *12. As the uncontroverted evidence described above shows, CHSI does not control the Hospital's day-to-day business decisions in disregard of the Hospital's business entity. The Court, therefore, cannot impute the Hospital's New Mexico contacts to CHSI.

In sum, Plaintiff fails to make a *prima facie* showing that (1) there is a substantial connection between Gloria Quimbey's death at the Hospital and CHSI's own actions as a remote and indirect owner of the Hospital, or (2) CHSI's relationship with the Hospital provides a basis for personal jurisdiction in New Mexico. Hence, Plaintiff has not demonstrated that this Court has specific jurisdiction over CHSI.

### C. Minimum Contacts: General Jurisdiction

General jurisdiction requires a plaintiff to demonstrate that a defendant's contacts with the forum state were so pervasive as to confer personal jurisdiction by the continuous and systematic nature of the defendant's in-state activities. *See Helicopteros Nacionales de*

*Colombia, S.A.*, 466 U.S. at 415; *OMI Holdings, Inc.*, 149 F.3d at 1090-91; *Trierweiler*, 90 F.3d at 1532-33. In other words, the defendant's affiliations with the forum state must be "so 'continuous and systematic' as to render [it] essentially at home in the forum [s]tate." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011); *see also Rosenberg v. Deutsche Bank AG*, 2012 WL 1963356 (D. Colo.). In general, a corporate entity's contacts are sufficiently continuous and systematic such that the entity is "at home" in the forum state when the forum state is the entity's domicile, place of incorporation, or principal place of business. *See Goodyear Dunlop Tires Operations, S.A.*, 131 S. Ct. at 2853-54 (citation omitted). In assessing a corporation's contacts with a forum, relevant factors include "(1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements . . . or bank accounts; and (4) the volume of business conducted in the state." *Trierweiler*, 90 F.3d at 1533 (citing 4 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1069, at 348-55 (2d ed. 1987) (citing cases)).

Plaintiff specifically argues that CHSI "owned, is involved in and had significant influence over the day-to-day operations of the hospital." (Doc. 41) at 17. CHSI, however, presents uncontroverted evidence that CHSI is not "at home" in New Mexico. For instance, New Mexico is not CHSI's place of incorporation or principal place of business. CHSI is also not registered to do business in New Mexico, does not have a local office, does not offer services for sale in New Mexico, and does not advertise or market in New Mexico. Moreover, CHSI does not have an appointed agent for service of process in New Mexico and does not have any real property, clients, or employees in New Mexico.

Plaintiff attempts to controvert this evidence by arguing that CHSI controlled the Hospital's operation and purposefully acquired hospitals in New Mexico. As discussed above, the uncontroverted evidence does not show that CHSI controlled the Hospital's operation. Furthermore, the uncontroverted evidence does not show that CHSI's remote ownership and lack of direct control over New Mexico hospitals provides a basis for personal jurisdiction. Consequently, the Court concludes that Plaintiff has not made a *prima facie* showing of general jurisdiction.

### D. Traditional Notions of Fair Play and Substantial Justice

Because the Court concludes that Plaintiff has failed to carry his burden of making a *prima facie* showing of minimum contacts, it is unnecessary for the Court to decide whether an exercise of personal jurisdiction would "offend traditional notions of fair play and substantial justice." Plaintiff has simply not established that this Court has personal jurisdiction over CHSI.

### E. Plaintiff's Request for Jurisdictional Discovery

The Court has broad discretion to allow parties to engage in discovery on factual issues raised in a motion to dismiss for lack of jurisdiction. *Bell Helicopter Textron, Inc. v. Heliqwest Intern., Ltd.,* 385 F.3d 1291 (10th Cir. 2004); *Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002). The party seeking jurisdictional discovery bears the burden to show that jurisdictional discovery is necessary. *Breakthrough Management Group, Inc. v. Chukchansi Gold Casino and Resort,* 629 F.3d 1173, 1190 (10th Cir. 2010). A party must support his request for jurisdictional discovery by more than a mere "hunch that it might yield jurisdictionally relevant facts." *Id.* (quoting *Boschetto v. Hansing,* 539 F.3d 1011, 1020 (9th Cir. 2008)). As this Court has explained,

> the district court is not "required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim." Rather, discovery is meant to "allow the parties to

> flesh out allegations for which they initially have at least a modicum of objective support." This means that before a court grants discovery, a plaintiff must first provide some reasonable allegations on which to base the pursuit of discovery.

*McManemy v. Roman Catholic Church of Diocese of Worcester*, 2 F. Supp. 3d 1188, 1195 (D.N.M. 2013) (citation omitted). Furthermore, a court abuses its discretion to deny a jurisdictional discovery request only if the denial prejudices a litigant. *Sizova,* 282 F.3d at 1326. Prejudice occurs where "pertinent facts bearing on the question of jurisdiction are controverted … or where a more satisfactory showing of the facts is necessary." *Id.* (quoting *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)).

Although Plaintiff generally desires to obtain discovery on CHSI's control of the operations of New Mexico hospitals, Plaintiff does not controvert Fordham's affidavits or any of the evidence presented by CHSI in support of the Motion to Dismiss. In other words, Plaintiff does not provide a "modicum of objective support" on which to base his request for discovery. Plaintiff's broad and extensive request for discovery demonstrates nothing more than an attempt to conduct a fishing expedition based on a hunch. Furthermore, since Plaintiff has not shown that any "pertinent facts bearing on the question of jurisdiction are controverted" or that "a more satisfactory showing of the facts is necessary," denial of Plaintiff's request for jurisdictional discovery will not prejudice Plaintiff. The Court also notes that a New Mexico state court judge allowed Plaintiff's counsel to engage in discovery on the issue of whether to exercise personal jurisdiction over CHSI. (Doc. 41-15). Significantly, Plaintiff has not moved to supplement his response with the discovery presumably obtained in state court. In sum, Plaintiff has failed to carry his burden of demonstrating that he should be allowed to engage in jurisdictional discovery. The Court, therefore, denies Plaintiff's request for jurisdictional discovery. Of

course, if Plaintiff finds, in the regular course of discovery, facts showing a basis for exercising personal jurisdiction over CHSI, he may move the Court to re-add CHSI as a Defendant.

IT IS ORDERED that

1. Community Health Systems, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 14) is granted;

2. Plaintiff's request for jurisdictional discovery is denied; and

3. Plaintiff's claims against CHSI will be dismissed without prejudice.

_____
UNITED STATES DISTRICT JUDGE