IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GLORIA QUIMBEY, DECEASED, BY THE
PERSONAL REPRESENTATIVE FOR
THE WRONGFUL DEATH ESTATE,
JOHN FAURE,

    Plaintiff,

vs.                                                                                                         Civ. No. 14-559 KG/KBM

COMMUNITY HEALTH SYSTEMS
PROFESSIONAL SERVICES CORPORATION,
TRIAD HOLDINGS V, LLC, LAS CRUCES
MEDICAL CENTER, LLC D/B/A MOUNTAINVIEW
REGIONAL MEDICAL CENTER,

and

ACCOUNTABLE HEALTHCARE STAFFING,
INC., ACCOUNTABLE HEALTHCARE
HOLDINGS CORPORATION, MEDASSETS
WORKFORCE SOLUTIONS, RONALD LALONDE,

and

AFFILION, LLC AND DR. JOEL MICHAEL JONES,

    Defendants.

### MEMORANDUM OPINION AND ORDER

       This matter comes before the Court upon Triad Holdings V, LLC's Motion to Dismiss for Lack of Personal Jurisdiction (Motion to Dismiss), filed June 24, 2014. (Doc. 17). Plaintiff filed a response on August 8, 2014, in which he argues against the merits of the Motion to Dismiss and, in the alternative, seeks discovery to establish personal jurisdiction over Defendant Triad Holdings V, LLC (Triad Holdings). (Doc. 39). Triad Holdings filed a reply on August 29, 2014.

(Doc. 50). Having reviewed the Motion to Dismiss and the accompanying briefs and exhibits, the Court grants the Motion to Dismiss and denies Plaintiff's request for jurisdictional discovery.

I.  Background

This is a wrongful death lawsuit arising from Gloria Quimbey's death in 2012 while a patient at Mountain View Regional Medical Center (Hospital), in Las Cruces, New Mexico. Plaintiff is suing a physician, a nurse, the Hospital, and several companies associated with the Hospital, including Triad Holdings.

A.  *Triad Holdings' Evidence in Support of the Motion to Dismiss*

Triad Holdings submitted affidavits by Ben C. Fordham, senior vice president and chief litigation counsel for Defendant Community Health Systems Professional Services Corporation (PSC), which describe Triad Holdings' business and how it relates to this lawsuit and the State of New Mexico. Fordham attests that:

    1. Triad Holdings is a Delaware limited liability company with its principal place of business in Tennessee;

    2. Triad Holdings is a holding company without any employees;

    3. Triad Holdings does not operate any hospitals, including the Hospital;

    4. Triad Holdings is the sole member of Defendant Las Cruces Medical Center, LLC, the direct owner and operator of the Hospital;

    5. Triad Holdings does not own or maintain the Hospital's website or Community Health System's website;

    6. Triad Holdings has not entered into a partnership, joint enterprise or joint venture with the Hospital;

    7. the Hospital's patients do not pay Triad Holdings;

8. Triad Holdings and the Hospital maintain separate accounting records and banking relationships;

9. the Hospital is not a designated agent for Triad Holdings;

10. the Hospital is not required to adopt any bylaws, policies, or procedures at the request of Triad Holdings;

11. Triad Holdings had no role in the care of Gloria Quimbey nor did Triad Holdings make any representations to Gloria Quimbey;

12. the Hospital's personnel who cared for Gloria Quimbey are not agents of Triad Holdings;

13. Triad Holdings did not furnish the equipment used to treat Gloria Quimbey or other patients;

14. Triad Holdings does not control any aspect of the Hospital's personnel, including the Chief Executive Officer or the Chief Nursing Officer;

15. Triad Holdings "does not transact business in New Mexico;"

16. Triad Holdings is not registered to do business in New Mexico;

17. Triad Holdings does not have an appointed agent for service of process in New Mexico;

18. Triad Holdings does not have an office or place of business in New Mexico;

19. Triad Holdings has no real property or clients in New Mexico;

20. Triad Holdings does not advertise, market, or offer to sell services in New Mexico;

21.  PSC and Defendant Las Cruces Medical Center, LLC are parties to a Management Agreement in which PSC provides management and consulting services to the Hospital;

22.  Triad Holdings does not control the day-to-day operations of PSC; and

23. Triad Holdings has no ownership interest in PSC.

(Docs. 17-1 and 50-1).

*B. Plaintiff's Evidence in Support of Personal Jurisdiction over Triad Holdings*

Plaintiff attached to his response an organizational chart which shows that Triad Holdings owns Defendant Las Cruces Medical Center, LLC and is a remote subsidiary of Community Health Services, Inc. (CHSI). (Doc. 39-1). Plaintiff further attached documents indicating that in July 2007 Triad Holdings and Defendant Las Cruces Medical Center, LLC became guarantors for Senior Notes issued by CHS/Community Health System, Inc. in a Supplemental Indenture. (Doc. 39-9). At the same time, Triad Holdings and Defendant Las Cruces Medical Center, LLC joined a Purchase Agreement in which CHS/Community Health System, Inc. sold its offered securities. (Doc. 39-10).

Plaintiff also attached to his response website pages for "Community Health Systems" which show that Community Health Systems has affiliated hospitals in New Mexico. (Doc. 39-2). The website indicates that the terms "CHS" or the "Company" refer to CHSI "and its affiliates, unless otherwise stated or indicated by context." *Id.* at 2. Moreover, the "term 'facilities' refers to entities owned or operated by subsidiaries or affiliates of Community Health Systems, Inc." while references to '"CHS employees' or to 'our employees' refer to employees of affiliates of CHS Inc." *Id.* The Terms & Conditions of Use also state that the

> 'we,' 'us,' 'our,' 'the Company,' and similar inclusive words are intended to be summary information about the consolidation of Community Health Systems, Inc. and its subsidiaries taken as a whole, and are not intended to bind or imply that the actions of one legal entity should be attributed to the actions of another legal entity (such as Community Health Systems, Inc.).

(Doc. 50-1) at 7. Additionally, the Terms & Conditions of Use state that

4

>[e]ach hospital affiliated with Community Health Systems, Inc. and Community Health Systems Professional Services Corporation is owned (or leased) and operated by a separate and distinct legal entity.  Each such legal entity is responsible for the healthcare services delivered at its respective facility, employs its own management and other personnel, and grants medical staff privileges and credentials to its own, separate medical staff.

*Id.* at 7-8.

Plaintiff additionally submitted a United States Securities and Exchange Commission (SEC) Form S-4 (prospectus) for "CHS/Community Health Systems, Inc." (Doc. 39-3).  That form indicates that "we" own and operate hospitals.  *Id.* at 2.  Form S-4 notes that "[u]nless otherwise indicated or the context requires otherwise, references in this prospectus to 'CHS,' 'we,' 'our,' 'us,' and 'the Company' refer to Community Health Systems, Inc. and its consolidated subsidiaries…." (Doc. 45-4) at 2.  The Form S-4 further explains that CHSI's "subsidiaries are separate and distinct legal entities…." *Id.* at 3.  Plaintiff further attached a website page from the SEC which lists CHSI as a Tennessee company under the category of "General Medical & Surgical Hospitals, NEC." (Doc. 39-6).

Moreover, Plaintiff submitted excerpts from CHSI's 2013 Annual Report to Stockholders which include a map showing six New Mexico hospitals. (Doc. 39-4).  The cover page to the 2013 Annual Report notes that CHSI owns and leases the affiliated hospitals through its subsidiaries.  *Id.* at 1.

Plaintiff further provided excerpts from the 2013 Directory of Investor-Owned: Community Hospitals, Hospital Management Companies and Health Systems, Residential Treatment Facilities and Centers, and Key Management Personnel (2013 Directory) which lists "Community Health Systems" as a Tennessee management company and describes Community Health System's six New Mexico hospitals, including the Hospital. (Doc. 39-5) at 3, 6-7.  The Federation of American Hospitals published the 2013 Directory.  *Id.* at 1.

Additionally, Plaintiff attached a 2014 news release by the Department of Justice (DOJ) on CHSI's settlement with the DOJ regarding unlawful billing practices under the False Claims Act. (Doc. 39-7).  The settlement required a monetary payment and required CHSI to enter into a Corporate Integrity Agreement.  *Id.* at 2.

### C. *Plaintiff's Affidavit in Support of Jurisdictional Discovery Request*

Plaintiff submitted an affidavit by his counsel indicating that she served interrogatories and requests for production on all of Defendants.  (Doc. 39-11) at ¶ 2.  Counsel includes the interrogatories and requests for production in the affidavit which she states would be relevant and "helpful" to determining the Motion to Dismiss.  *Id.* at ¶¶ 3-5.  Counsel further indicates in the affidavit that depositions of each of the Defendants would provide information regarding the issue of exercising personal jurisdiction over Triad.  *Id.* at ¶ 6.  The Court notes that the requested discovery is extensive and broad in nature.

## II. Discussion

Triad Holdings moves to dismiss Plaintiff's claims against it under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.  Plaintiff opposes the Motion to Dismiss and, alternatively, seeks jurisdictional discovery.

### A. Legal Standard

Federal courts sitting in diversity have personal jurisdiction over nonresident defendants to the extent permitted by the law of the forum, in this case, New Mexico.  *Benally v. Amon Carter Museum of Western Art*, 858 F.2d 618, 621 (10th Cir. 1988) (citations omitted).  The parties may present affidavits, depositions, answers to interrogatories, and similar evidentiary matters on a motion attacking jurisdiction, which the Court freely considers.  *See Sunwest Silver, Inc., v. Int'l Connection, Inc.*, 4 F.Supp.2d 1284, 1285 (D.N.M. 1998); *Jones v. 3M Company*,

6

107 F.R.D. 202, 204 (D.N.M. 1984).  The plaintiff has the burden of establishing personal jurisdiction over the defendant.  *See Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir.1996).  The plaintiff meets that burden at the pre-trial motion stage if he makes a *prima facie* showing that personal jurisdiction exists.  *Behagen v. Amateur Basketball Ass'n,* 744 F.2d 731, 733 (10th Cir.1984), *cert. denied,* 471 U.S. 1010 (1985).  The Court accepts the plaintiff's allegations in the complaint as true if the defendant does not contest them with affidavits or other materials, and resolves all factual disputes raised by conflicting affidavits in the plaintiff's favor.  *Id.* at 733.

New Mexico applies a three-part test to determine whether personal jurisdiction lies over non-residents.  The Court must determine whether: (1) the defendant committed an act or omission specifically set forth in New Mexico's long-arm statute; (2) the cause of action arises out of that act or omission; and (3) the defendant has sufficient minimum contacts to satisfy due process concerns. *Tercero v. Roman Catholic Diocese of Norwich, Conn.*, 2002-NMSC-018, ¶ 8, 132 N.M. 312.  However, "'[t]he first and third step of this test have been repeatedly equated with the due process standard of minimum contacts,' removing the necessity of a technical determination of whether the non-resident committed an act enumerated by the long-arm statute." *Alto Eldorado Partnership v. Amrep*, 2005-NMCA-131, ¶ 30, 138 N.M. 607 (quoting *Santa Fe Techs., Inc. v. Argus Networks, Inc.,* 2002–NMCA–030, ¶ 13, 131 N.M. 772 (internal quotation marks and citation omitted)).  Hence, the courts focus on the defendant's minimum contacts with New Mexico and the second step of the test.  *Id.* at ¶¶ 30 and 36.

Minimum contacts with the forum state may be established through either general or specific jurisdiction.  Both general and specific personal jurisdiction also require a showing that the exercise of jurisdiction would not "offend traditional notions of fair play and substantial

justice." *Id.* at ¶ 31.  Here, Plaintiff claims that the Court has both specific and general jurisdiction over Triad.

      B.  Minimum Contacts:  Specific Jurisdiction

Specific jurisdiction requires a plaintiff to show that (1) a defendant has "purposely avail[ed itself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws," and (2) that "the litigation results from alleged injuries that arise out of or relate to those activities."  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086,  1090–91 (10th Cir. 1998) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985)); *see also Trierweiler v. Croxton & Trench Holding Corp.,* 90 F.3d 1523, 1532 (10th Cir.1996).  Specifically, the injury must arise out of "actions by the defendant *himself* that create a substantial connection with the forum state."  *OMI Holdings, Inc.,* 149 F.3d at 1091 (quoting *Asahi Metal Indus. Co. v. Superior Ct. of Ca.,* 480 U.S. 102, 109 (1987)).  A plaintiff's *prima facie* burden to establish specific jurisdiction is less stringent than his burden to establish general jurisdiction, because general jurisdiction does not require a nexus between the contact and underlying injury.  *See id.*

Plaintiff concedes Triad Holdings does not have employees in New Mexico, is not registered to do business in New Mexico, does not advertise in New Mexico, and has no place of business or real property in New Mexico.  Plaintiff argues, however, that Triad Holdings nonetheless purposefully availed itself of the privilege of conducting business in New Mexico by directly owning Defendant Las Cruces Medical Center, LLC, a New Mexico subsidiary and operator of the Hospital.  Plaintiff cites several cases which found specific jurisdiction on the basis of either a cause of action arising from a substantial connection with the forum state or from a foreign company's control of a New Mexico subsidiary.  *Burger King Corp.*, 471 U.S.

462; *Alto Eldorado Partnership*, 2005-NMCA-131; *State Farm Mutual Ins. Co. v. Conyers*, 1989-NMSC-071,109 N.M. 243; *Thistlethwaite, et al. v. Elements Behavioral Health, Inc., et. al.*, Civ. No. 14-138 WJ/CG (Doc. 32) (D.N.M. July 2, 2014). Here, however, Plaintiff has not shown that the wrongful death cause of action arises from a substantial connection Triad Holdings has with the State of New Mexico or that Triad Holdings exercises control over Defendant Las Cruces Medical Center, LLC. First, the inclusive generic language found in the Community Health Systems website, the SEC documents, the 2013 Annual Report, the 2013 Directory, and the DOJ news release is not sufficient to show that Triad Holdings has New Mexico contacts through its ownership of Defendant Las Cruces Medical Center, LLC. *See Weisler v. Cmty. Health Sys., Inc.*, No. CIV. 12-0079 MV/CG, 2012 WL 4498919, at *5 (D.N.M.) (unverified newspaper article and website owned and operated by third party which contains inclusory generic language are "not a sufficient contact to show that Defendant CHSI has purposely availed itself of the privilege of conducting activities within New Mexico and that the injury arose out of those contacts."); *Moody v. Charming Shoppes of Delaware, Inc.*, 2008 WL 2128955, at *4, 6-7 (N.D. Cal.) (generic language in news release, SEC filings, and on website "simply do not rise to the day-to-day control required to impute the subsidiary's contacts to the parent"). Second, the Court fails to see how Triad Holdings' involvement in CHSI's indenture and securities sales agreements demonstrates that Triad Holdings has minimum contacts with New Mexico, especially when the uncontroverted evidence indicates that CHSI does not directly own or operate its affiliate hospitals, including those in New Mexico. Finally, the uncontroverted evidence simply does not show a substantial connection between Gloria Quimbey's death at the Hospital and Triad Holdings' own actions as an owner of Defendant Las Cruces Medical Center, LLC.

Furthermore, even if Triad Holdings owns Defendant Las Cruces Medical Center, LLC, this ownership alone does not confer personal jurisdiction under New Mexico law. As Triad Holdings correctly argues, if a foreign parent corporation owns all of a New Mexico subsidiary corporation's stock, "jurisdiction over a subsidiary corporation does not of itself give a state judicial jurisdiction over the parent corporation…." *Jemez Agency, Inc. v. CIGNA Corp.*, 866 F. Supp. 1340, 1343 (D.N.M. 1994) (citation omitted). Additionally, the "mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent." *Id.* (citation omitted). Nonetheless, the Court may properly invoke jurisdiction over a foreign parent company predicated on the acts of one of its subsidiaries if the parent company actually controls the subsidiary's day-to-day business decisions and disregards the subsidiary's separate business entity. *Weisler*, 2012 WL 4498919 at *12. As the uncontroverted evidence shows, Triad Holdings does not control Defendant Las Cruces Medical Center, LLC's day-to-day business decisions by disregarding Defendant Las Cruces Medical Center, LLC's separate business entity. The Court, therefore, cannot impute Defendant Las Cruces Medical Center, LLC's New Mexico contacts to Triad Holdings.

In sum, Plaintiff fails to make a *prima facie* showing that (1) there is a substantial connection between Gloria Quimbey's death at the Hospital and Triad Holdings' own actions as owner of Defendant Las Cruces Medical Center, LLC, or (2) Triad Holdings' relationship with Defendant Las Cruces Medical Center, LLC provides a basis for personal jurisdiction in New Mexico. Hence, Plaintiff has not demonstrated that this Court has specific jurisdiction over Triad Holdings.

*C. Minimum Contacts: General Jurisdiction*

General jurisdiction requires a plaintiff to demonstrate that a defendant's contacts with the forum state were so pervasive as to confer personal jurisdiction by the continuous and systematic nature of the defendant's in-state activities. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984); *OMI Holdings, Inc.*, 149 F.3d at 1090-91; *Trierweiler*, 90 F.3d at 1532-33. In other words, the defendant's affiliations with the forum state must be "so 'continuous and systematic' as to render [it] essentially at home in the forum [s]tate." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011); *see also Rosenberg v. Deutsche Bank AG*, 2012 WL 1963356 (D. Colo.). In general, a corporate entity's contacts are sufficiently continuous and systematic such that the entity is "at home" in the forum state when the forum state is the entity's domicile, place of incorporation, or principal place of business. *See Goodyear Dunlop Tires Operations, S.A.*, 131 S. Ct. at 2853-54 (citation omitted). In assessing a corporation's contacts with a forum, relevant factors include "(1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements . . . or bank accounts; and (4) the volume of business conducted in the state." *Trierweiler*, 90 F.3d at 1533 (citing 4 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1069, at 348-55 (2d ed. 1987) (citing cases)).

In this case, Triad Holdings presents uncontroverted evidence that it is not "at home" in New Mexico. For instance, New Mexico is not Triad Holdings' place of incorporation or principal place of business. Triad Holdings is also not registered to do business in New Mexico, does not have a local office, does not offer services for sale in New Mexico, and does not

advertise or market in New Mexico. Moreover, Triad Holdings does not have an appointed agent for service of process in New Mexico and does not have any real property, clients, or employees in New Mexico.

Plaintiff attempts to controvert this evidence by arguing that Triad Holdings actually owns Defendant Las Cruces Medical Center, LLC, a New Mexico subsidiary. As discussed above, Triad Holdings' ownership and lack of control over Defendant Las Cruces Medical Center, LLC fails to provide a basis for personal jurisdiction. The Court concludes that Plaintiff has not made a *prima facie* showing of general jurisdiction.

### D. Traditional Notions of Fair Play and Substantial Justice

Because the Court concludes that Plaintiff has failed to carry his burden of making a *prima facie* showing of minimum contacts, it is unnecessary for the Court to decide whether an exercise of personal jurisdiction over Triad Holdings would "offend traditional notions of fair play and substantial justice." Plaintiff has simply not established that this Court should exercise personal jurisdiction over Triad Holdings.

### E. Plaintiff's Request for Jurisdictional Discovery

The Court has broad discretion to allow parties to engage in discovery on factual issues raised in a motion to dismiss for lack of jurisdiction. *Bell Helicopter Textron, Inc. v. Heliqwest Intern., Ltd.,* 385 F.3d 1291 (10th Cir. 2004); *Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002). The party seeking jurisdictional discovery bears the burden to show that jurisdictional discovery is necessary. *Breakthrough Management Group, Inc. v. Chukchansi Gold Casino and Resort,* 629 F.3d 1173, 1190 (10th Cir. 2010). A party must support his request for jurisdictional discovery by more than a mere "hunch that it might yield

jurisdictionally relevant facts." *Id.* (quoting *Boschetto v. Hansing,* 539 F.3d 1011, 1020 (9th Cir. 2008)). As this Court has explained,

> the district court is not "required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim." Rather, discovery is meant to "allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." This means that before a court grants discovery, a plaintiff must first provide some reasonable allegations on which to base the pursuit of discovery.

*McManemy v. Roman Catholic Church of Diocese of Worcester*, 2 F. Supp. 3d 1188, 1195 (D.N.M. 2013) (citation omitted). Furthermore, a court abuses its discretion to deny a jurisdictional discovery request only if the denial prejudices a litigant. *Sizova,* 282 F.3d at 1326. Prejudice occurs where "pertinent facts bearing on the question of jurisdiction are controverted … or where a more satisfactory showing of the facts is necessary." *Id.* (quoting *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)).

Although Plaintiff generally desires to obtain discovery on Triad Holdings' control over the operations of New Mexico hospitals, Plaintiff does not controvert Triad Holdings' evidence supporting a lack of personal jurisdiction. In other words, Plaintiff does not provide a "modicum of objective support" on which to base his request for discovery. Plaintiff's broad and extensive request for discovery demonstrates nothing more than an attempt to conduct a fishing expedition based on a hunch. Furthermore, since Plaintiff has not shown that any "pertinent facts bearing on the question of jurisdiction are controverted" or that "a more satisfactory showing of the facts is necessary," denial of Plaintiff's request for jurisdictional discovery will not prejudice Plaintiff. In sum, Plaintiff has failed to carry his burden of demonstrating that he should be allowed to engage in jurisdictional discovery. The Court, therefore, denies Plaintiff's request for jurisdictional discovery. Of course, if Plaintiff finds, in the regular course of discovery, facts

showing a basis for exercising personal jurisdiction over Triad Holdings, he may move the Court to re-add Triad Holdings as a Defendant.

IT IS ORDERED that

1. Triad Holdings V, LLC's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 17) is granted;

2. Plaintiff's request for jurisdictional discovery is denied; and

3. Plaintiff's claims against Triad Holdings will be dismissed without prejudice.

_____
UNITED STATES DISTRICT JUDGE