IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN FAURE, as Personal Representative
for the Wrongful Death Estate of
GLORIA QUIMBEY, Deceased,

        Plaintiff,

v.                                           No. 14cv559 KG/KBM

LAS CRUCES MEDICAL CENTER, LLC,
doing business as Mountain View Regional Medical
Center, ACCOUNTABLE HEALTHCARE
STAFFING, INC., ACCOUNTABLE HEALTHCARE
HOLDINGS CORPORATION, and RONALD LALONDE,

        Defendants,

and

LAS CRUCES MEDICAL CENTER, LLC,

        Cross Claimant,

v.

ACCOUNTABLE HEALTHCARE
HOLDINGS CORPORATION, and
ACCOUNTABLE HEALTHCARE
STAFFING, INC.,

        Cross Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court upon Defendant Las Cruces Medical Center, LLC,

d/b/a Mountain [V]iew Regional Medical Center's ("Defendant MVRMC") Motion to Exclude

Certain Opinions and Testimony of Plaintiffs' Testifying Experts John Stein, M.D., and Fred

Hyde ("Motion to Exclude"), filed on February 27, 2017.  (Doc. 342).  Plaintiff filed a response

on March 22, 2017, and Defendant MVRMC filed a reply on April 19, 2017. (Docs. 359, 375).

Having reviewed the Motion to Exclude, the accompanying briefs, and exhibits, the Court grants

in part and denies in part the Motion to Exclude.

## I. Background

This is a wrongful death lawsuit concerning the death of Gloria Quimbey ("Ms.

Quimbey"). Defendant MVRMC moves to exclude certain opinion evidence by Dr. John Stein

("Dr. Stein") and Mr. Fred Hyde ("Mr. Hyde").

### A. Dr. Stein's Expert Report

Plaintiff intends to introduce the testimony of Dr. Stein to discuss the administration of

tPA, a medication designed to dissolve blood clots, to Ms. Quimbey. (Doc. 342) at 3; (Doc. 342-

14) at 3. In his expert report, Dr. Stein lists the evidence he considered in formulating his expert

opinion. He then describes the chronology of events from the time Ms. Quimbey entered the

MVRMC emergency room ("ER") on December 11, 2012, to her death on December 12, 2012.

(Doc. 342-14) at 2-3. Dr. Stein discusses the administration of tPA in general and the use of tPA

in this case. *Id*. at 3-4. Finally, Dr. Stein states his conclusions. *Id*. at 4. With regard to

Defendant MVRMC, Dr. Stein states that MVRMC's stroke protocol, "including tPA preparation

was appropriate." *Id*. at 3. However, the administration of tPA to Ms. Quimbey by travelling

nurse Ronald Lalonde ("Mr. Lalonde") in the telemetry unit of MVRMC "represented a

catastrophic system failure on the part of the hospital." *Id*. Dr. Stein notes that "while the

hospital had an adequate tPA protocol, it was not followed. The hospital failed to ensure that

[Mr. Lalonde] was aware of the protocol [for administering tPA,] and had been trained in the

protocol." *Id*. at 4.

*B. Mr. Hyde's Expert Report*

Plaintiff intends to introduce his second expert, Mr. Hyde, to discuss hospital management. (Doc. 342-15). Mr. Hyde's expert report gives opinions about Defendant MVRMC's standard of care regarding (1) information management; (2) leadership; (3) contractual agreements; (4) patient flow; (5) medication management; (6) nursing; and (7) communication of accurate medication information. *Id*. at 1-5. Mr. Hyde found that Defendant MVRMC fell below the standard of care in "information management; leadership; oversight of care, treatment and services provided through contractual agreement; medication management; nursing organization; and also National Patient Safety Goals." *Id*. In sum, Mr. Hyde argues "errors and failures in each of these areas may have been fatal, but, taken together . . . illustrate a systemic shortcoming by [Defendant MVRMC], suggesting indifference to quality assurance and quality improvement and the resulting safety of its patients." *Id*. at 6 (emphasis in original omitted).

*II. Expert Testimony Standard*

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony and provides that,

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>> (b) the testimony is based on sufficient facts or data;
>> (c) the testimony is the product of reliable principles and methods; and
>> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

The proponent of the expert bears the burden of satisfying Rule 702 and establishing the admissibility of the testimony, which in this case falls on Plaintiff. *United States v. Baines*, 573 F.3d 979, 985 (10th Cir. 2009).

Rule 702 imposed upon the Court a "gatekeeping" function with regard to the admissibility of expert opinions. *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). The objective of the gatekeeping obligation is to "ensure the reliability and relevancy of expert testimony ... to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

The gatekeeping function involves a two-step analysis. *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1134 (10th Cir. 2009). First, the Court must determine whether the witness may be qualified as an expert. To qualify as an expert, the witness must possess such "knowledge, skill, experience, training, or education" in the particular field so that it appears that his or her opinion rests on a substantial foundation and tends to aid the trier of fact in its search for the truth. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004). "Rule 702 thus dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject." *United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir. 1991).

Second, the Court must determine whether the witness' opinions are reliable under the principles set forth in *Daubert* and *Kumho Tire*. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). In *Daubert*, the Supreme Court identified five factors that may or may not be pertinent in assessing reliability: (1) the theory or technique in question can be and

has been tested; (2) it has been subjected to peer review and publication; (3) it has a known or potential error rate; (4) the existence and maintenance of standards controlling its operation; and (5) whether it has attracted widespread acceptance within a relevant scientific community. 509 U.S. at 593–94. When assessing the reliability of a proposed expert's testimony, the Court may consider the *Daubert* factors to the extent relevant, which will depend on the nature of the issue, the expert's particular expertise, and the subject of his testimony. *Kumho Tire*, 526 U.S. at 150-51.

Rule 702 further requires that expert testimony is relevant. One aspect of relevance is that the opinions have a sufficient factual basis and a reliable application of the methodology to the facts. *Daubert*, 509 U.S. at 591. A sufficient factual basis does not necessarily require the facts or data upon which an expert bases his or her opinion to be independently admissible, so long as they are of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject. FED. R. EVID. 703.

The Court should liberally admit expert testimony and has broad discretion in deciding whether to admit or exclude expert testimony. *See United States v. Gomez*, 67 F.3d 1515, 1526 (10th Cir. 1995) (describing Rule 702 as "liberal standard"); *Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 647 (10th Cir. 1991) (noting trial court's decision will not be overturned "unless it is manifestly erroneous or an abuse of discretion").

*III. Discussion*

Defendant MVRMC now moves the Court to exclude Dr. Stein and Mr. Hyde's opinions with regard to (1) staffing levels at MVRMC and the telemetry unit; (2) Defendant MVRMC's failure to appropriately hire, orient, or train Mr. Lalonde; and (3) Defendant MVRMC's systemic or system-wide negligence. (Doc. 342) at 2. Plaintiff maintains that the Motion to Exclude

should be denied or the Court should defer issuing a ruling until Defendant MVRMC produces supplemental discovery. (Doc. 359) at 2.

The Court determines it has sufficient evidence to evaluate the experts' testimony without a hearing. *See Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000); *see also Dodge v. Cotter Corp.*, 328 F.3d 1212, 1228 (10th Cir. 2003) ("[A] district court has discretion to limit the information upon which it will decide the *Daubert* issue.").

A. *Staffing Levels*

Defendant MVRMC argues that neither Dr. Stein nor Mr. Hyde are qualified to opine as to the appropriate staffing levels on the telemetry floor. (Doc. 342) at 2. Plaintiff maintains that expert testimony about staffing levels is not required and neither Dr. Stein nor Mr. Hyde plan to offer testimony regarding the staffing levels at MVRMC.

1. *Requirements for Expert Testimony*

Expert testimony is not necessary "if negligence can be determined by resort to common knowledge ordinarily possessed by an average person." *In re Otero*, 527 B.R. at 769 (quoting *Zamora v. St. Vincent Hosp.*, 2014-NMSC-035, ¶ 27) (internal quotation marks omitted)). New Mexico generally requires expert testimony in medical malpractice cases to prove negligence. *Holley v. Evangelical Lutheran Good Samaritan Soc'y.*, 588 Fed. Appx. 792, 795 (10th Cir. 2014) (unpublished) (quoting *Gerety v. Demers*, 1978-NMSC-097, ¶ 54).

Instead of presenting expert testimony about staffing levels, Plaintiff intends to present the lay witness testimony of Mr. Lalonde. (Doc. 359) 4-5. A lay witness may testify regarding matters that are within the common knowledge and experience of an average person. *Id.* at 5 (citing *Garcia v. Borden, Inc.*, 1993-NMCA-047, ¶ 10). According to Plaintiff, Mr. Lalonde's testimony meets the requirements of Rule 701 for a lay witness because it is (1) based on his own

experience and perception; (2) helpful in determining whether the telemetry unit was understaffed; and (3) not based on scientific, technical, or specialized knowledge. *Id.* Additionally, Plaintiff contends that documentary evidence shows that telemetry staff were assigned to six patients during the day and as many as eight at night, which "were not 'safe' ratios." *Id.* at 6 (citing Doc. 305-1).

Plaintiff's arguments are unavailing. A "safe" ratio of medical staff to patients in a telemetry unit is not within the common knowledge of individuals. Consequently, testimony about staffing levels in the telemetry unit is not appropriate for a lay witness. Plaintiff must present expert testimony regarding staffing levels; therefore, the Court will discuss the qualifications of each of Plaintiff's experts.

       2. *Qualifications of Plaintiff's Experts*

Dr. Stein received his medical degree from Dartmouth Medical School. (Doc. 345-1) at 1. He has held different teaching positions at the University of California, San Francisco ("UCSF") since 2001 and is currently an associate professor at UCSF primarily teaching courses on emergency medicine. *Id.* Dr. Steins spends approximately 32 hours per month working as an attending physician in the emergency department at UCSF. *Id.* at 8. In addition to his duties at UCSF, Dr. Stein has set up two stroke programs in hospitals. (Doc. 342-17) at 51:12.

Mr. Hyde graduated from the Yale School of Medicine and the Yale School of law. (Doc. 342-15) at 8. Mr. Hyde then served as the Vice President at the Yale-New Haven Hospital in New Haven, Connecticut and the first Director of the Faculty Practice Plan for the Yale School of Medicine. *Id.* He is currently the president of Fred Hyde & Associates, Inc., a professional consulting service to hospitals. *Id.* During his time as a consultant, Mr. Hyde also served ten years as the chief executive officer ("CEO") of two community hospitals and the

Northeast Hospital Network.  *Id*.  The Northeast Hospital Network is "an alliance of seventeen hospitals engaged in the development of common industry practices and products, involving managed care, nurse staffing, and other matters of common concern."  *Id*.  He serves as a clinical professor in the Department of Health Policy and Management at the Joseph Mailman School of Public Health at Columbia University, where he teaches courses in hospital administration.  *Id*. at 9.  Recently, Mr. Hyde began teaching Clinical Professor Health Policy & Management at the Columbia Business School.  *Id*.

### 3.  *Opinions Regarding Staffing Levels at MVRMC*

Both experts offer opinions about the staffing levels at MVRMC.  During his deposition, Dr. Stein admitted that while a ratio of one nurse to five or six patients "seems like [it] is below the standard of care," he is not an expert in staffing levels and he does not know the standard of care for staffing levels in New Mexico.  (Doc. 342-17) at 118:13-16, 135:2-16.  Plaintiff admits that Dr. Stein cannot offer an opinion regarding the staffing levels at MVRMC, but asks the Court to permit Dr. Stein to testify that employing fewer staff can increase risk for patients. (Doc. 359) at 6.

Dr. Stein bases his opinion that employing fewer staff increases risks to patients on a "multiyear" study from California that examined staffing levels, as well as his clinical experience in California where staffing ratios are mandated.  (Doc. 342-17) at 117:3-7, 135:5-6.  Dr. Stein described the findings of the California study and stated that he "can only offer my clinical experience from a time when California didn't have those staffing ratios to the current period now where we do."  *Id*. at 135:5-7.  Although Dr. Stein has experience with staffing levels based on his role as a physician, he admits that he is not an expert on staffing levels or the appropriate standard of care in New Mexico.  Rather, Dr. Stein offers a lay witness opinion, which the Court

found is not appropriate.  Although Dr. Stein's credentials add weight to his professional qualifications, they do not rise to the necessary level of expertise in the area of staffing levels for nurses.  Moreover, he expresses his own reservations about testifying definitively as an expert, indeed, he stated he is not an expert.  Consequently the Court finds that Dr. Stein's opinion regarding staffing levels is not based on sufficient facts and data and his opinion will not assist the trier of fact and therefore is not permitted.

Mr. Hyde stated that his opinion on staffing levels is based on his experience as a hospital administrator and is limited to the premise that the organization responsible for controlling the hospital is responsible for any staffing issues.  (Doc. 342-18) at 24:18-25:6.  Mr. Hyde contends that he will not testify "that the hospital was understaffed and as a result . . . [,] Ms. Quimbey received tPA when she shouldn't have."  *Id.* 25:9-13.  Plaintiff maintains that he will not offer Mr. Hyde as an expert on whether the telemetry unit at MVRMC was understaffed.  (Doc. 359) at 7.  Instead, based on his experience as the CEO of several hospitals, Mr. Hyde will testify that staffing issues are the responsibility of the organization that controls the hospital.  *Id.*  The Court finds that Mr. Hyde's testimony concerning responsibility for staffing the hospital is based on sufficient facts and data and will assist the trier of fact.  However, because neither Mr. Hyde nor Plaintiff hold Mr. Hyde out as an expert on the appropriate level of staffing in a hospital, the Court finds that Mr. Hyde's opinions on staffing levels at MVRMC will not assist the trier of fact and are not permitted.

### B.  Deferral of Ruling

Plaintiff asks the Court to defer ruling on the Motion to Exclude until Defendant MVRMC produces Court ordered supplemental discovery regarding staffing levels in the telemetry unit at MVRMC and Plaintiff's experts can review the discovery.  *Id.* at 2.  Because

the Court finds that neither expert designated by Plaintiff is qualified to testify about the regarding staffing levels at MVRMC, the Court will not defer ruling on the Motion to Exclude until the experts review new discovery.

### C. Hiring and Training of Mr. Lalonde

Plaintiff's Complaint alleges that Defendant MVRMC negligently failed to adequately hire and train competent nursing staff, such as traveling nurse Mr. Lalonde, which proximately caused Ms. Quimbey's death. (Doc. 24-1) at 15, ¶ 61 (a), (f). Defendant MVRMC states that the experts should not be permitted to testify about hiring and training nurses at MVRMC because Dr. Stein does not offer an opinion regarding the proper training of nurses, and Mr. Hyde saw no evidence to support an argument that Mr. Lalonde was or was not properly trained. (Doc. 342) at 2. Plaintiff argues that although expert testimony is not required on the subject, the testimony of Dr. Stein and Mr. Hyde meet the Rule 702 requirements. (Doc. 359) at 7.

As an initial matter, the requirements of hiring and training nurses are not common knowledge. Consequently, any testimony regarding hiring and training nurses requires expert testimony.

Dr. Stein stated generally that MVRMC has a responsibility to ensure that nurses are properly trained. (Doc. 359-3) at 34:17-20. He opined that Mr. Lalonde "by definition [ ] was not appropriately trained because he was put into a situation in which he was giving a medication and he clearly didn't have the training to understand whether to do that appropriately and how to do that appropriately." *Id*. at 35:1-6. Dr. Stein placed the blame for the failure to train Mr. Lalonde on both Defendant MVRMC and Mr. Lalonde's employer, Defendant Accountable Healthcare Staffing, Inc. *Id*. at 35:13-20, 151:3-11. However, Dr. Stein also testified that he reviewed evidence regarding emergency department training at MVRMC and it appeared to meet

the standard of care.  (Doc. 342-17) at 71:12-21.  He noted that he was not an expert on "what hospitals should do to [ensure] the competence of a traveling nurse."  (Doc. 342-17) at 137:15-18.  Although Dr. Stein opined that MVRMC did not properly train Mr. Lalonde, Dr. Stein acknowledged that he is not an expert in the training of traveling nurses, thus the Court finds that he may not testify regarding hiring and training because his opinions are not based on sufficient facts and data and will not assist the trier of fact.

In Mr. Hyde's expert report, he stated that MVRMC provided "minimal supervision or evaluation of" contract services.  (Doc. 342-15) at 4.  However, based on his statements at his deposition, it is not clear how Mr. Hyde came to this conclusion in his expert report.  Indeed, Mr. Hyde acknowledged that he did not have any evidence on what MVRMC did or did not do to ensure traveling nurses were well-qualified.  *Id*. at 141:24-142:11.  Mr. Hyde noted that "there's no basis for" an opinion that Defendant MVRMC's orientation for traveling nurses was deficient and he saw "no testimony" as to whether Defendant MVRMC "properly tested or monitored Mr. Lalonde."  *Id*. at 95:8-21, 101:8-15.  Because Mr. Hyde stated that he does not have the information to render an opinion regarding Defendant MVRMC's training of traveling nurses, the Court finds that he may not testify regarding the hiring and training of Mr. Lalonde because his opinions are not based on sufficient facts and data and will not assist the trier of fact.

### D. MVRMC Systemic or System Wide Negligence

Defendant MVRMC argues that the experts' criticism of Defendant MVRMC involve the actions of individuals not adhering to MVRMC policy and not systemic failure within MVRMC.  (Doc. 342) at 2.  Plaintiff counters that substantial evidence supports the experts' opinions regarding systemic failures.  (Doc. 359) at 9.

Based on his experience as a physician in the ER and setting up two stroke programs, Dr. Stein noted several "system failures" at MVRMC in his deposition testimony. He stated that "[t]he fact that the tPA journeyed around the hospital exchanging hands on multiple occasions clearly beyond the time when it was indicated was a failure of the system." (Doc. 359-3) at 18:20-23. Dr. Stein found that the pharmacists, nurses and doctors in the ER, and nurses in the telemetry unit participated in this failure of the system and "there was a failure in the overall process that [MVRMC] has in distributing and providing tPA." *Id*. at 18:24-21:8, 28:21-29:7, 46:9-11. Dr. Stein also argued that the hospital's stroke policies were not complete in that tPA was not listed as a high-alert medication. *Id*. at 47:18-23. Dr. Stein's testimony clearly places blame for failures within MVRMC on several sources and not just on specific individuals. Based on this evidence, the Court finds Plaintiff has shown that Dr. Stein's opinions are based on sufficient facts and data that will assist the trier of facts. To the extent that Defendant MVRMC disputes his opinions, those issues are matters to be addressed in cross-examination and resolved by the jury.

In the summary of his expert report, Dr. Hyde stated that "errors and failures in each of" the categories described in the report "may have been fatal, but taken together . . . illustrate a systemic shortcoming by" Defendant MVRMC. (Doc. 342-15) at 6. In his deposition, Mr. Hyde argued that "the organization, structure, and function of [MVRMC] needs to be sufficiently robust, tested, capable, up to standards to ensure that individual error is at least minimized." (Doc. 359-4) at 86:11-16. Specifically for Defendant MVRMC, Mr. Hyde will testify to the fact that the "policies with regard to communication, recordkeeping, [and] leadership" at MVRMC were not "sufficiently strong to support . . . a stroke program." (Doc. 342-18) at 72:8-13. Mr. Hyde's testimony focuses on Defendant MVRMC as a whole and not on the individuals that

treated Ms. Quimbey. With regard to systemic failures, Mr. Hyde's opinions are based on sufficient facts and data and will assist the trier of fact.

*IV. Conclusion*

In sum, the Court finds that neither Dr. Stein nor Mr. Hyde are qualified to testify regarding appropriate staffing levels at MVRMC or the hiring, orientation, or training of Mr. Lalonde or traveling nurses at MVRMC. Mr. Hyde is qualified to testify regarding the narrow issues of staffing identified in this Memorandum Opinion and Order. Further, in terms of systemic failures at MVRMC, Dr. Stein may testify about the tPA policies at MVRMC and the failures in the administration of tPA to Ms. Quimbey. Mr. Hyde may testify about the organizational or structural failures at MVRMC.

Therefore, IT IS ORDERED that Defendant Las Cruces Medical Center, LLC, d/b/a Mountain [V]iew Regional Medical Center's Motion to Exclude Certain Opinions and Testimony of Plaintiffs' Testifying Experts John Stein, M.D. and Fred Hyde (Doc. 342) is GRANTED IN PART AND DENIED IN PART.

_____
UNITED STATES DISTRICT JUDGE