# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

GLORIA QUIMBEY, DECEASED, BY THE
PERSONAL REPRESENTATIVE FOR
THE WRONGFUL DEATH ESTATE,
JOHN FAURE,

    Plaintiff,

v.                                                                                                                        CIV 14-0559 KG/KBM

COMMUNITY HEALTH SYSTEMS
PROFESSIONAL SERVICES CORPORATION,
LAS CRUCES MEDICAL CENTER, LLC D/B/A
MOUNTAIN VIEW REGIONAL MEDICAL CENTER,

and

ACCOUNTABLE HEALTHCARE STAFFING,
INC., ACCOUNTABLE HEALTHCARE
HOLDINGS CORPORATION, MEDASSETS
WORKFORCE SOLUTIONS, RONALD LALONDE,

and

AFFILION, LLC AND DR. JOEL MICHAEL JONES,

    Defendants.

# MEMORANDUM OPINION AND ORDER REGARDING
# PLAINTIFF'S REQUESTS FOR PRODUCTION NOS. 17 AND 19

THIS MATTER comes before the Court on the following motions: Plaintiff's

Motion for Leave to File Motion for Enforcement of Court Order (*Doc. 429*) ("Motion for

Leave"), Plaintiff's Motion for Enforcement of Order Regarding Plaintiff's Request for

Production Nos. 17 and 19 to Defendant Mountain View Regional Medical Center

(*Doc. 429,* Ex. 1) ("Motion for Enforcement of Court Order"), and Defendant Mountainview Regional Medical Center's 2nd Supplemental Motion for Protective Order and Response to Plaintiff's Motion for Enforcement of Order Regarding Plaintiff's Request for Production Nos. 17 and 19 (*Doc. 442*) ("Defendant Hospital's Second Motion for Protective Order").

Plaintiff first seeks leave to file the Motion for Enforcement of Court Order, which she attached as Exhibit 1 to her Motion for Leave. Defendant Hospital does not oppose this request and has, instead, addressed the substance of Plaintiff's Motion for Enforcement of Court Order. Plaintiff followed suit in her reply brief, further addressing the substance of her Motion for Enforcement of Court Order and responding to Defendant Hospital's Second Motion for Protective Order. Given the lack of opposition, the Court will grant Plaintiff's Motion for Leave. *See* D.N.M.LR-CR. 7.1(b) (failure to respond in opposition constitutes consent to grant motion). Moreover, because the Court is satisfied that it has adequate briefing on Plaintiff's Motion for Enforcement of Court Order, it will proceed to the merits of that motion, rather than require the parties to refile it along with responsive briefs.

The Court has reviewed the parties' submissions and the relevant law and has also undertaken an *in camera* review of the documents submitted by Defendant Las Cruces Medical Center, LLC ("Defendant Hospital"), which it contends are protected by the New Mexico Review Organization Immunity Act ("ROIA"), N.M. Stat. Ann. § 41-9-1 to 41-9-7 (1978), and the Patient Safety and Quality Improvement Act ("PSQIA"), 42 U.S.C. § § 299b-21 to 26, and Texas Occupations Code § 301.466(a)(2). The Court

finds that Plaintiff's Motion for Enforcement of Court Order is well-taken in part. Likewise, Defendant Hospital's Second Motion for Protective Order is well-taken in part.

## I.  Background

Following a hearing on March 3, 2017, the Court ordered Defendant Hospital to search for and to produce to Plaintiff the following documents:

> i. Documents constituting the budget that was in effect at the time of the subject hospitalization of Gloria Quimbey.
> ii. Any electronic correspondence to or from Willa Dixon, Kelly Clark, Denten Park, and Karen Anderson containing the search terms "Quimbey" or "Lalonde," regardless of date.
> iii. Any electronic correspondence to or from Willa Dixon, Kelly Clark, Denten Park, and Karen Anderson during the calendar year 2012, which contain the following combination of search terms:
>  1. "patient" + "ratio" + "telemetry"
>  2. "short" + "staff" + "telemetry"
>  3. "short" + "staff" + "emergency/ED/ER"
>  4. "traveler" + "emergency/ED/ER."

*Doc. 351* at 3. After receiving two extensions, Defendant Hospital produced documents responsive to this Order but withheld others subject to the assertion of certain privileges and protections. *Docs. 374, 401, 405*. On May 19, 2017, Defendant Hospital provided a privilege log for documents it withheld. *See Doc. 429*, Ex. 1. Then, on September 13, 2017, concurrent with the filing of its response to the subject motion, Defendant Hospital provided its "1st Amended Privilege Log." *Doc. 442*, Ex. A. Defendant Hospital also provided the Court with the documents identified in that amended privilege log for *in camera* review.

## II.  Legal Standard

As the Court has previously discussed, both the New Mexico Review Organization Immunity Act (ROIA) and the Patient Safety and Quality Improvement Act of 2005 (PSQIA) provide protections against the disclosure of medical peer-review

documents and information. *See Doc. 241* at 2. The pertinent portion of New Mexico's ROIA statute provides:

> All data and information acquired by a review organization in the exercise of its duties and functions shall be held in confidence and shall not be disclosed to anyone except to the extent necessary to carry out one or more of the purposes of the review organization or in a judicial appeal from the action of a review organization. . . . Information, documents or records otherwise available from original sources shall not be immune from discovery or use in any civil action merely because they were presented during proceedings of a review organization, nor shall any person who testified before a review organization or who is a member of a review organization be prevented from testifying as to matters within his knowledge, but a witness cannot be asked about opinions formed by him as a result of the review organizations hearings.

N.M. Stat. Ann. § 41-9-5 (1978). The statute defines a "review organization" as an organization whose "membership is limited to health care providers and staff" and whose purpose is to "gather and review information relating to the care and treatment of patients for the purposes of":

> (1) Evaluating and improving the quality of health care services rendered in the area or by a health care provider;
> (2) Reducing morbidity or mortality;
> (3) Obtaining and disseminating statistics and information relative to the treatment and prevention of diseases, illnesses and injuries;
> (4) Developing and publishing guidelines showing the norms of health care services in the area or by health care providers;
> (5) Developing and publishing guidelines designed to keep within reasonable bounds the cost of health care services;
> (6) Reviewing the nature, quality or cost of health care services provided to enrollees of health maintenance organizations and nonprofit health care plans;
> (7) Acting as a professional standards review organization . . .
> (8) Determining whether a health care provider shall be granted authority to provide health care services using the health care provider's facilities or whether a health care provider's privileges should be limited, suspended, or revoked.

N.M. Stat. Ann. § 41-9-2(E) (1993).

The New Mexico Supreme Court has interpreted ROIA and crafted burdens to govern discovery disputes under the Act. *See Sw. Cmty. Servs. v. Smith*, 755 P.2d 40, 44-45 (N.M. 1988). First, the party seeking to compel discovery, Plaintiff here, has the initial burden of "proving relevance to subject matter." *See Chavez* v. *Lovelace Sandia Health Sys., Inc.*, 189 P.3d 711, 715 (N.M. Ct. App. 2008). Next, the party invoking ROIA's protections, here Defendant Hospital, must establish that the data or information was "generated exclusively for peer review and for no other purpose" and that the "opinions were formed exclusively as a result of peer review deliberations." *Id.* Finally, if the court determines that the information is confidential under ROIA, the party seeking the information may attempt to persuade the court that the information "constitutes evidence which is critical to the cause of action or defense." *Id.* at 715-16. For instance, if the court determines that the "litigant's cause of action or defense would likely turn on the evidence adjudged to fall within the scope of Section 41-9-5, then [it] shall compel production." *Id.* at 716.

The PSQIA is essentially a federal overlay to state peer-review statutes like New Mexico's ROIA. According to Congress, the PSQIA was drafted to "strike[] the appropriate balance between plaintiff rights and creating a new culture in the health care industry that provides incentives to identify and learn from errors." S. Rep. No. 108-196, at 3 (2003). The PSQIA created a voluntary reporting mechanism for healthcare providers to share data on adverse medical incidents in an effort to improve patient safety. *See* 24 U.S.C. § 299b-21-26 (2012). The Act grants privileges and confidentiality protections to information that constitutes "patient safety work product." *Id.* Patient safety work product is information that is reported to a patient safety organization

5

(PSO), developed by a PSO, or analyzed as part of a system for reporting to or by a PSO. 42 U.S.C. § 299b-21 (2012). PSOs must be certified and listed by the Secretary of the Department of Health and Human Services, 42 U.S.C. § 299b-24 (2012); however, the Secretary has delegated this function to the Agency for Healthcare Research and Quality, which maintains an online listing of approved PSOs, 42 C.F.R. § 3.112 (2012).

This Court previously held that the express language of the PSQIA demonstrates Congressional intent to preempt state peer-review statutes, at least to the extent that a state statute fails to protect information qualifying as patient safety work product. *Doc. 241* at 5. ROIA is also impliedly preempted by the PSQIA in circumstances where compliance with both Acts would be impossible. *Id.* That is, when a court or parties conclude that certain information should be produced under a ROIA criticality analysis, because of implied conflict preemption, the information remains categorically protected and excluded from production so long as it qualifies as patient safety work product under the PSQIA. *Id.*

### III. Analysis

Defendant Hospital contends that "all four of the electronic searches that Plaintiff requested and the Court ordered pertained to staffing levels in the telemetry unit and emergency department in the Hospital." *Doc. 442* at 7. According to Defendant Hospital, Judge Gonzales' exclusion of testimony concerning "appropriate staffing levels" at the hospital rendered such information irrelevant to Plaintiff's claims. *Id.* at 8.

But Defendant Hospital's position is oversimplified. First, the searches ordered by this Court on March 7, 2017, did not relate *only* to staffing levels. Rather, the searches were also for documents constituting the budget in effect at the relevant time as well as

6

electronic correspondence containing the terms "Quimbey," "Lalonde," or "traveler" + "emergency/ED/ER." See *Doc. 351* at 2-3. In addition, the Court is not persuaded that any responsive documents that relate to staffing at the hospital are now wholly irrelevant to Plaintiff's claims. Despite Judge Gonzales' exclusion of certain opinions and testimony by Dr. Stein and Dr. Hyde, he also held that Dr. Hyde was "qualified to testify regarding the narrow issues of staffing identified in th[e] Memorandum Opinion and Order," namely that "staffing issues are the responsibility of the organization that controls the hospital." *Doc. 445* at 2-3 (citing *Doc. 438* at 9, 13). Further, Judge Gonzales determined that Dr. Hyde could testify about Defendant Hospital's "organizational and structural failures" and that Dr. Stein could testify about its "systemic failures." *Id.* at 3 (citing *Doc. 438* at 13). In other words, while Plaintiff's experts may not present testimony regarding what constituted a safe staffing ratio at the hospital, Judge Gonzales has not, thus far, excluded any opinions regarding staffing issues at the hospital.

Plaintiff suggests that, in addition to staffing issues, some of the documents withheld by Defendant Hospital are likely relevant to Defendant Hospital's "organizational and structural failures" as well as to Plaintiff's punitive damages claim. *Doc. 445* at 4. The Court considers these claims by Plaintiff in determining the discoverability of the documents at issue.

**A. Documents 1294-96, 1567-69, and 1580.**

In conjunction with its Second Motion for Protective Order, Defendant Hospital provided the affidavit of Karen Dawson, its Risk Manager and Compliance Officer. *See Doc. 442*, Ex. B. Ms. Dawson identified documents 1294-96 and 1567-69 as confidential

attorney-client communications. Additionally, she identified document 1580 as a

document prepared in anticipation of litigation. Plaintiff withdrew her request that the

Court compel production of these documents, and her motion is therefore denied as

moot as to Documents 1294-96, 1567-69, and 1580.

    **B. E-mails**

Plaintiff submits that Defendant Hospital has failed to offer any support for

privilege claims asserted as to certain e-mail communications produced in response to

its electronic search. *Doc. 445*. More particularly, Plaintiff identifies the following

e-mails:

    416 ("E-mail string between Yasmine Estrada and MVRMC Representative")
    696 ("E-mail string between Denten Park and Karen Anderson")
    704 ("E-mail string between Denten Park and Kelly Clark")
    1150 ("E-mail string between Kelly Clark and Daniel Pattarozzi")
    1381-1382 ("E-mail string between Melina Loya and Willa Dixon")
    1401 ("E-mail string between Denten Park and Karen Anderson")
    1462-1463 ("E-mail string between Vince Bader and Willa Dixon")
    1464-1465 ("E-mail string between Jackie Moran and Willa Dixon")
    1466-1467 ("E-mail string between Jackie Moran and Willa Dixon")
    1468-1469 ("E-mail string between Vince Bader and Willa Dixon")

*See Doc. 445* at 5. In its 1st Amended Privilege Log, Defendant Hospital asserted ROIA

and PSQIA privileges as to each of these e-mails. *See Doc. 442*, Ex. A. Yet, Ms.

Dawson does not specifically reference these e-mails in her affidavit, and Defendant

Hospital has not otherwise demonstrated that they are privileged. Further, having

conducted an *in camera* review of these e-mails, it is not apparent that they contain

"data and information acquired by a review organization in the exercise of its duties and

functions." Certain of the emails, including Documents 1462-69, include a response that

was apparently submitted to the Joint Commission regarding complaints against

Defendant Hospital. This Court previously held that Defendant Hospital had failed to

8

meet its burden to establish that documents created for or submitted to the Joint Commission were entitled to protection under ROIA. *See Doc. 241* at 11-12. Because this remains true, the Court will require Defendant Hospital to produce Documents 1462-69.

Documents 696 and 1401 each contain an e-mail from Denten Park to Karen Anderson concerning an unnamed patient. Because there is no indication that the e-mail contains "data and information acquired by a review organization in the exercise of its duties and functions," the Court will order production of these documents as well.

Documents 1381-82 contain a survey which appears to have been completed by staff in the Telemetry and Medical Surgical Departments of the hospital in 2011, approximately a year before the subject incident. While the information contained therein strikes the Court as the type of information that might be useful for peer review, Defendant Hospital has not specifically maintained that the survey was acquired by a review organization in the exercise of its duties and functions. Once again, Karen Dawson does not address in her affidavit whether this specific survey is protected by ROIA or PSQIA. Further, the attached email indicates that the survey was conducted "for Sharon in regard to her units." The Court is unable to ascertain whether the "Sharon" referenced in the e-mail is part of a review organization, and Defendant does not provide any argument or evidence in this regard. Under these circumstances, Defendant Hospital has not met its burden to establish that a privilege applies to Documents 1381-82. Accordingly, the Court will require Defendant Hospital to produce Documents 1381-82.

Documents 451-54, 708-09, and 1470 contain communications between Defendant Hospital's administrators, including human resources and risk management staff, to employees of Community Health Systems Professional Services Organization. The e-mails relate to a "Compliance 360" complaint. In her affidavit, Ms. Dawson describes Compliance 360 as an initiative that "involves hospital data and information used to address various internal hospital practices including compliance, patient privacy, and other similar issues." *Doc. 442*, Ex. B ¶ 8. Ms. Dawson states that the Compliance 360 documents were generated exclusively to carry out peer review purposes and for no other reason and that the opinions and decisions contained therein were formed as a result of peer review organization deliberations. *Id.* Ms. Dawson does not maintain that these documents constitute patient safety work product provided to a PSO. Thus, Defendant Hospital has not established that they qualify for protection under the PSQIA.

Even if the Court was satisfied that these e-mail communications were protected by ROIA for the reasons set forth by Ms. Dawson, it finds that they are nevertheless critical to Plaintiff's presentation of her case. Plaintiff has alleged that Defendant Hospital's systemic and organizational failures in staffing and training contributed to Gloria Quimbey's death. The communications in Documents 451-454, 708-09, and 1470 discuss relevant circumstances in the Telemetry Unit just months before the subject incident. Given that these documents were created close in time to Defendant Hospital's alleged negligence and go directly to issues in the case, the Court considers them highly probative, perhaps more so than other evidence that Plaintiff could procure

through reasonable means. The Court will require production of Documents 451-454, 708-09, and 1470.

### C. Letters to Texas Board of Nursing

Defendant Hospital withheld communications by its employees and/or agents to the Texas and New Mexico Boards of Nursing, including Documents 331, 344, 658, 1162, 1163, 1298, 1300, 1302, 1565, 1572, and 1574, asserting that these materials are protected under Federal Rule of Civil Procedure 26(b)(3)(A) because they were prepared in anticipation of litigation. *Doc. 442* at 17. Defendant Hospital also submits that a Texas state statute, Texas Occupations Code § 301.466(a)(2), prohibits it from disclosing these documents to Plaintiff. *Doc. 442* at 17.

First, it is not apparent to the Court how these letters to the Texas and New Mexico Boards of Nursing would constitute trial preparation materials under Rule 26(b)(3)(a)(A), and Defendant Hospital offers only a conclusory explanation for its assertion of the work-product protection. Upon *in camera* review of the documents, the Court finds that instead of being prepared in anticipation of litigation, they appear to be aimed at reporting Defendant Lalonde's conduct to the state nursing boards and assisting them in making informed decisions concerning his nursing license. *See, e.g., 445*, Ex. 4, Deposition of Willa Dixon (testifying that she reported Defendant Lalonde's error to the nursing board through written documentation). "[I]n order to establish work product[] protection for a document, a discovery opponent must show that 'the primary motivating purpose behind the creation of a document'. . . [was] 'to aid in possible future litigation[.]'" *Allen v. Chicago Transit Auth.*, 198 F.R.D. 495, 500 (N.D. Ill. 2001). Narrowly construing the work-product doctrine, as it must, the Court finds that

11

Defendant Hospital has failed to establish that it protects the subject correspondence to the Texas and New Mexico Boards of Nursing.

Moreover, Texas Occupations Code § 301.466 does not shield these letters from disclosure. The statute provides:

> [A]ll information and material compiled by the [B]oard [of Nursing] in connection with the complaint and investigation are . . . not subject to disclosure, discovery, subpoena, or other means of legal compulsion for release to anyone other than the board or a board employee or agent involved in license holder discipline.

Tex. Occ. Code § 301.466(a)(2). But Plaintiff seeks production of communications *from Defendant Hospital* in the context of discovery in a civil law suit; it is not seeking information or material complied by the Texas Board of Nursing. Second, Texas law does not apply. The parties have stipulated that the substantive law governing this case is that of New Mexico, not Texas. *Doc. 83*, Joint Status Report, at 3. In diversity cases, "state law supplies the rule of decision on privilege." Fed. R. Evid. 501; *Frontier Refining, Inc. v. Groman-Rupp Co., Inc.*, 136 F.3d 695, 698 (10th Cir. 1998). Defendant Hospital has cited no authority, and the Court is aware of none, that would demonstrate that Texas Occupations Code § 301.466 somehow operates to preclude disclosure of the referenced communications in discovery.

For these reasons, the Court will grant Plaintiff's Motion as to Documents 331, 344, 658, 1162, 1163, 1298, 1300, 1302, 1565, 1572, and 1574.

**D. Joint Commission Preparation Committee Meeting Minutes**

Defendant Hospital contends that Documents 234 and 1156-60, which it identifies as the Joint Commission Preparation Committee Meeting Minutes, are protected by ROIA and PSQIA. Ms. Dawson makes no claim that these documents

12

were patient safety work product submitted to a PSO; thus, Defendant Hospital has failed to establish that they are entitled to protection under the PSQIA. As to ROIA, while the Court has determined herein that documents created for or submitted to the Joint Commission are not entitled to protection under ROIA, it has not yet passed upon documents generated by Defendant Hospital's Joint Commission Preparation Committee.

According to Ms. Dawson's affidavit, the purpose of the Joint Commission Preparation Committee "is to monitor patient care activities and the hospital's general environment of care in accordance and compliance with Joint Commission standards and in preparation for regulatory surveys." *Doc. 442*, Ex. B ¶ 6. Ms. Dawson states that these minutes were "generated exclusively to carry out one or more of the purposes of the peer review committees and/or review organizations and for no other reason." *Id*. ROIA, of course, only applies if the minutes were prepared by a "review organization," as defined by the statute. Plaintiff contends that because the committee is aimed at maintaining the Joint Commission Certification and preparing for regulatory surveys, it does not qualify as a review organization.

The Court, however, is satisfied that the Joint Commission Preparation Committee is a review organization made up of health care providers and staff whose purpose was to gather and review information in order to evaluate and improve the quality of health care services rendered by Defendant Hospital, though they admittedly did so with reference to the Joint Commission's standards. The Committee's minutes are entitled to protection under ROIA.

Plaintiff submits that the information in the Committee's minutes is nevertheless critical to her case, because issues concerning Defendant Hospital's stroke program certification by the Joint Commission are central to her claims. The Court disagrees. Plaintiff's causes of action are unlikely to turn on the information contained in the Committee's minutes; indeed, the information is tangential to the issues in this case. Accordingly, the Court will deny Plaintiff's Motion as to Documents 234 and 1156-60.

### E. Outpatient Pulse Report

While Defendant Hospital contends that its Outpatient Pulse Reports are protected by ROIA and PSQIA, Plaintiff submits that its description of these documents does not support such protection. Ms. Dawson describes the Outpatient Pulse Reports as containing "various information and data related to treatment and for hospital allocation of resources to best serve the medical needs of the patient population." *Doc. 442*, Ex. B ¶ 9. As with other withheld documents, Ms. Dawson states that Outpatient Pulse Reports "were generated exclusively to carry out one or more of the purposes of the peer review committees and/or review organizations and for no other reason." *Id.* The Court's review of the Outpatient Pulse Reports comports with Ms. Dawson's description of them. The reports appear to have been compiled by health care providers and staff with the purpose of disseminating statistical information regarding the treatment of illnesses and injuries and with the aim of keeping health care costs within reasonable bounds. Thus, the Court is satisfied that the documents were generated by a peer review organization for purposes enumerated in the ROIA statute and are, thus, entitled to ROIA protection. The Court further finds that the documents are not critical to Plaintiff's claims. Although Plaintiff makes general allegations

concerning Defendant Hospital's allocation of resources, her causes of action are unlikely to turn upon the information contained in the Outpatient Pulse Reports. The Court will deny Plaintiff's Motion as to Documents 669-72, 674-75, 678-701, and 1250-51.

### F. Meaningful Use Measures

Finally, Plaintiff seeks production of documents related to Meaningful Use Measures. Ms. Dawson describes Document 1289 as "MountainView's Summary Meaningful Use Measure Threshold Report" and Documents 359 and 360 as "MountainView's Meaningful Use Reports and Meaningful Use Threshold Reports." Defendant Hospital submits that the Meaningful Use Reports are protected from disclosure by PSQIA and ROIA. *See Doc. 442*, Ex. A. Because Ms. Dawson does not specifically maintain that the Meaningful Use Reports qualify as patient safety work product provided to a PSO, the Court concludes that they are not entitled to PSQIA protection. Ms. Dawson does insist, however, that the documents were generated exclusively for "peer review." She explains that Documents 359 and 360 "constitute data collection used to analyze and promote quality improvement within the hospital." *Doc. 442*, Ex. B ¶ 7.

Plaintiff, in contrast, notes that "'meaningful use measure' data is compiled for the Centers for Medicare and Medicaid Services (CMS) as a requirement of participation in the Electronic Health Record (EHR) Incentive Program." *Doc. 445* at 12. She refers the Court to a document available online from CMS's website, which outlines the requirements for the Stage 1 of the "Medicare and Medicaid EHR Incentive Program." *See* https://www.cms.gov/Regulations-and-Guidance/Legislation/

EHRIncentivePrograms/ downloads /MU_Stage1_ReqOverview.pdf, last accessed Nov. 17, 2017. The document suggests that the reporting of Meaningful Use data to CMS is required by law in order to receive incentives. *See id.* Plaintiff submits that data collected for submission to CMS is not data generated exclusively for peer review. Defendant Hospital does not offer any argument that would support the application of ROIA save the conclusory statements of Ms. Dawson in her affidavit. For instance, it does not identify any peer review committee or organization that collected or reviewed the information contained in the reports; nor does it elaborate on the purpose of gathering the information, other than to say that the reports were created to "promote quality improvement within the hospital." Likewise, Defendant Hospital does not contend that CMS is a "review organization" as defined by ROIA.

Accordingly, Defendant Hospital has failed to meet its burden to establish that the Meaningful Use Reports were generated exclusively for peer review and for no other purpose. The Court will therefore grant Plaintiff's Motion as to Documents 359-60 and 1289.

Wherefore,

**IT IS HEREBY ORDERED AS FOLLOWS:**

1. Plaintiff's Motion for Leave to File Motion for Enforcement of Court Order (*Doc. 429*) is **granted**.

2. Plaintiff's Motion for Enforcement of Court Order Regarding Plaintiff's Request for Production Nos. 17 and 19 to Defendant Mountain View Regional Medical Center (*Doc. 429*, Ex. 1) **is granted in part as follows**:

a. Defendant Hospital must produce the e-mails strings and attachments in **Documents 451-54, 696, 708-09, 1381-82, 1401, and 1462-70**.

b. Defendant Hospital must produce the correspondence to state nursing boards found in **Documents 331, 344, 658, 1162-63, 1298, 1300, 1302, 1565, 1572, and 1574**.

c. Defendant Hospital must produce the Meaningful Use Reports found in **Documents 359-60 and 1289.**

3. Conversely Defendant MountainView Regional Medical Center's 2nd Supplemental Motion for Protective Order and Response to Plaintiff's Motion for Enforcement of Order Regarding Plaintiff's Request for Production Nos. 17 and 19 (*Doc. 442*) **is granted in part as follows**:

    a. Defendant Hospital need not produce Documents 1294-96, 1567-69, and 1580, which were identified as documents prepared in anticipation of litigation and as attorney-client communications.

    b. Defendant Hospital need not produce the Joint Commission Preparation Committee Minutes found in Documents 234 and 1156-60.

    c. Defendant Hospital need not produce the Outpatient Pulse Reports found in Documents 669-72, 674-75, 678-701, and 1250-51.

4. Defendant Hospital must provide to Plaintiff the documents for which the Court has ordered production by November 29, 2017. In all other respects, the above motions are **denied**.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE